(No. 57017.-

JERRY MAXFIELD v. PAUL E. SIMMONS, Appellant
(Walter DeNeal *et al.*, Appellees).

*Opinion filed April 13, 1983.*

Harris, Lambert & Wilson, of Marion, for appellant.

David W. Hauptmann, of Harrisburg, for appellees.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendant and third-party plaintiff, Paul E. Simmons (Simmons), appealed from the order of the circuit court of Saline County dismissing with prejudice his third-

party complaint against Walter DeNeal, doing business as DeNeal Building Supply (DeNeal), and Jesse B. Holt, Inc. (Holt). The appellate court affirmed (107 Ill. App. 3d 341), and we allowed Simmons' petition for leave to appeal.

On August 16, 1978, Jerry Maxfield filed a complaint against Simmons alleging that the single-family dwelling which Simmons had built for him did not comply with the contract specifications because the roof was constructed in a "poor and shoddy manner as to cause the roof thereon to buckle, bend and dip, and caused the interior ceiling to crack, split at the seams and bulge." On May 12, 1980, Simmons filed a third-party complaint against DeNeal and Holt. In the third-party complaint as amended, Simmons alleged that if he were found liable to the plaintiff, it would be because the trusses supplied by DeNeal and manufactured by Holt were defective, and alleged that the third-party plaintiff was "entitled to indemnity or contribution from third-party defendants." Both DeNeal and Holt moved to dismiss the third-party complaint, *inter alia*, on the ground that the statute of limitations had run against third-party plaintiff Simmons. Holt attached an affidavit of its president, Jesse B. Holt, in which it is stated that the trusses referred to in the third-party complaint were delivered by Holt to DeNeal on April 3, 1974. DeNeal filed an affidavit in which he stated that the trusses were delivered directly by Holt to Simmons on April 3, 1974. The circuit court entered an order dismissing the amended third-party complaint with prejudice on the basis that the four-year statute of limitations contained in section 2—725 of the Uniform Commercial Code (Ill. Rev. Stat. 1977, ch. 26, par. 2—725) had run.

The appellate court, in three opinions, affirmed. The lead opinion filed by the appellate court, relying on *Board of Education v. Joseph J. Duffy Co.* (1968), 97 Ill.

App. 2d 158, and *Talandis Construction Corp. v. Illinois Building Authority* (1974), 23 Ill. App. 3d 929, held that the third-party complaint failed to state a cause of action for the reason that "a stranger to a contract between two parties cannot be compelled to indemnify one of the parties for breach of contract absent the stranger's *express* agreement to so indemnify." (107 Ill. App. 3d 341, 343.) The concurring opinion held that the sale of the trusses "was simply a sale of goods under the Uniform Commercial Code" and that under section 2—725 (Ill. Rev. Stat. 1979, ch. 26, par. 2—725) "any action for breach of any contract for sale must be commenced within four years after the cause of action accrues." (107 Ill. App. 3d 341, 344 (Karns, P.J., concurring).) The dissenting opinion held that the third-party complaint stated a cause of action and that the cause of action will not ripen until the third-party plaintiff is found liable in the original action. It characterized the action brought by the plaintiff "as one for a tortious breach of contract." 107 Ill. App. 3d 341, 344 (Welch, J., dissenting).

Simmons contends that when DeNeal sold the trusses he knew or should have known that they were to be used in the roof of a house and that the relationship between Simmons and DeNeal and Holt "gives rise to an implied contract of indemnity." He argues that *Board of Education v. Joseph J. Duffy Co.* (1968), 97 Ill. App. 2d 158, is distinguishable in that the plaintiff board of education had separate contracts with each of the defendants, Perkins and Duffy, but there was no relationship of any kind between the defendants. *Talandis Construction Corp. v. Illinois Building Authority* (1974), 23 Ill. App. 3d 929, he argues, is not authority contrary to his position for the reason that the court did not consider the tortious relationship as the basis for indemnity.

DeNeal contends that the appellate court correctly held that the statute of limitations contained in the Uni-

form Commercial Code had run and that the third-party complaint failed to state a cause of action. It argues that there is no allegation of "a qualitative distinction between the conduct of the parties" and that there is no pretort relationship between the parties which could give rise to an implied contract of indemnity.

We have considered DeNeal's argument based on *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, that "The Uniform Commercial Code provided the proper framework for recovery of economic losses and to allow the extension of the tort theories of strict liability, negligence or innocent misrepresentation to cover solely economic losses would, in effect, eviscerate the comprehensive scheme of remedies fashioned by the U.C.C." We do not view *Moorman* as controlling here. In *Moorman,* this court noted that "the law of sales has been carefully articulated to govern the economic relations between suppliers and consumers of goods." (91 Ill. 2d 69, 78.) The court stated that to adopt strict liability in tort for economic loss would effectively eviscerate section 2—316 of the Uniform Commercial Code (Ill. Rev. Stat. 1977,ch. 26, par. 2—316). (91 Ill. 2d 69, 79.) Consistent with the Code's intent to permit the parties to commercial transactions to provide by agreement for their respective rights and obligations (see Ill. Rev. Stat. 1979, ch. 26, par. 1—102(3); see also comment 2 to this section (Ill. Ann. Stat., ch. 26, par. 1—102, Uniform Commercial Code Comment, at 10-11 (Smith-Hurd (1963))), we refused, in *Moorman,* by rejecting a cause of action for products liability where only economic injuries were involved, to preclude contracting parties pursuant to section 2—316 from excluding or modifying warranties as they saw fit. Here, the recognition of a cause of action for indemnity does not defeat the purpose of the four-year statute of limitations contained in section 2—725. A single transaction or occurrence, such as an in-

jury caused by a defective product, will typically present the possibility of causes of action sounding in implied warranty, express warranty, negligence, and strict liability. Section 2—725 controls in causes of action based on contract principles, but not in those causes of action based on tort principles. A recognition of this implied right of indemnity does not "eviscerate" the UCC's statute of limitations contained in section 2—725, since it has no application to the indemnity cause of action. Where no section of the Code purports to control an issue, section 1—103 (Ill. Rev. Stat. 1979, ch. 26, par. 1—103) provides that the principles of law and equity shall apply to supplement the provisions of the Code. Thus, by the Code's own mandate, we are not precluded from recognizing Simmons' implied right of indemnity against DeNeal.

The situation presented here is analogous to that found in a products liability case in which the assembler of the completed product seeks indemnity from the manufacturer of a component part. Under those circumstances this court has held that the assembler of the finished product may seek indemnity. *Liberty Mutual Insurance Co. v. Williams Machine & Tool Co.* (1975), 62 Ill. 2d 77.

For the purposes of the motion to dismiss, the allegations of the third-party complaint, as amended, must be taken as true. It is alleged that Simmons denies the allegations in the complaint filed by plaintiff, but states further that in the event that he is indebted to plaintiff the liability would be due to the faulty and defective materials, including the trusses, which were sold by DeNeal and designed, manufactured and sold by Holt. The third-party complaint alleges tortious conduct on the part of DeNeal and Holt sufficient to give rise to the right to indemnification and contribution in that it was the tortious conduct that caused the roof of the house in question to

"buckle, bend and dip." The implied contract of indemnity arose from the contractual relationship between the parties, but the liability, if any, imposed on Simmons will be the result not of breach of contract, but of tortious conduct. Under the circumstances we fail to perceive why the situation here should differ from that in a products liability case.

We conclude that the third-party complaint states a cause of action, and for the reasons stated the judgments of the appellate and circuit courts are reversed and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

*Judgments reversed;*
*cause remanded.*